**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOTTI KAPLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and IMAX CORPORATION,<br><br>Defendants. | Case No.: 06-cv-06128 (NRB)<br><br>ECF CASE |
| SANTIAGO GUZMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | Case No.: 06-cv-06235 (NRB) |

(add'l captions to follow)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WESTCHESTER CAPITAL MANAGEMENT INC.'S MOTION FOR THE CONSOLIDATION OF ALL RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

| | |
|---|---|
| ERIC S. BERGEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>-v-<br><br>RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and IMAX CORPORATION<br><br>Defendants. | Case No.: 06-cv-06313 (NRB) |
| MICHAEL J. LAROSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No.: 06-cv-06349 (NRB) |
| ROBERT FEENEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No.: 06-cv-06449 (NRB) |
| FLOYD REYNOLDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No.: 06-cv-06693 (NRB) |

| | |
|---|---|
| ANTHONY CAIAFA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and KATHRYN A. GAMBLE,<br><br>Defendants. | Case No.: 06-cv-07057 (NRB) |
| ROBERT B. GRAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No.: 06-cv-07162 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

RELATED ACTIONS SHOULD BE CONSOLIDATED .......... 5

POINT I WESTCHESTER CAPITAL SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CONSOLIDATED ACTION .......... 7

A. THE PROCEDURES REQUIRED BY THE PSLRA .......... 7

B. WESTCHESTER CAPITAL SATISFIES THE LEAD PLAINTIFF PROVISIONS OF THE PSLRA .......... 8

1. Westchester Capital Has Complied With The PSLRA .......... 8

2. Westchester Capital Has The Largest Financial Interest In The Relief Sought .......... 8

3. Westchester Capital Otherwise Satisfies Rule 23 .......... 9

(a) The Claims Of The Proposed Lead Plaintiffs Are Typical Of The Claims Of The Class .......... 10

(b) The Proposed Lead Plaintiff Will Fairly And Adequately Represent The Interests Of The Class .......... 11

POINT II THIS COURT SHOULD APPROVE WESTCHESTER CAPITAL'S CHOICE OF LEAD COUNSEL .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## Cases

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992) ........ 10

*In re eSpeed, Inc. Sec. Litig.*
232 F.R.D. 95 (S.D.N.Y. 2005) ........ 9

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D. N.Y. 1998) ........ 9

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990) ........ 6

*Werner v. Satterlee, Stephen, Burke & Burke*,
797 F. Supp. 1196 (S.D.N.Y. 1992) ........ 6

## Statutes

15 U.S.C. §78u-4(a)((3)(A) and (B) ........ 8
15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) ........ 7
15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ........ 8
15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ........ 2, 9
15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ........ 9
15 U.S.C. §78u-4(a)(3)(B)(ii) ........ 5

Rule 42(a) ........ 5

Section 21D ........ passim

## Other Authorities

H.R. Conf. Rep No. 104-369 (1995),
reprinted at 1995 U.S.C.A.A.N. 730 ........ 2

## PRELIMINARY STATEMENT

Westchester Capital Management, Inc., (hereinafter "Westchester Capital" or "Movant")[1], respectfully submits this memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order: (i) consolidating all related class actions; (ii) appointing Westchester Capital as the Lead Plaintiff in the consolidated action and any subsequently filed related cases, and (iii) approving its selection of Abbey Spanier Rodd Abrams & Paradis, LLP as Lead Counsel for the Class.

Westchester Capital acquired 1,538,087 shares of IMAX Corporation common stock ("IMAX" or the "Company") during the period from February 17, 2006 through August 9, 2006 (the "Class Period")[2] and as a result has suffered losses of approximately $3,623,551.79.[3] Westchester Capital believes that it has sustained the largest loss of any qualified investor seeking to be appointed lead plaintiff for the consolidated action. Westchester Capital is familiar with the applicable provisions governing the appointment of the lead plaintiff in securities class actions, understands its responsibilities to the class, and is willing and able to oversee the prosecution of this action.

---

1 Westchester Capital Management Inc. is a fund manager located in Vahalla, New York. It is not affiliated with Westchester Capital Management Inc located in Nebraska. The federal securities laws specifically authorize class members, regardless of whether they have filed a complaint, to move for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). Westchester Capital's certification setting forth all its transactions in IMAX common stock is attached as Exhibit B to the Declaration of Nancy Kaboolian ("Kaboolian Decl. Ex_________") submitted herewith. Westchester Capital includes the funds: GS Master Trust, MMS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund. Westchester Capital did not purchased IMAX stock in any fund not listed in its certification.

2 Any differences in the Class Period alleged in the Related Actions can be worked out in the Consolidated Amended Complaint filed after the appointment of the Lead Plaintiff.

3 The losses suffered by Westchester Capital, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question, which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the executed certification required under Section 21D of the Exchange Act and based upon reference to information concerning the market for the IMAX's common stock.

As an institutional investor, Westchester Capital is exactly the type of plaintiff Congress envisioned to lead securities class action lawsuits following the passage of the PSLRA. As the Statement of Managers noted, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because among other reasons, institutional investors and other class members with large amounts at stake "will represent the interest of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep No. 104-369 (1995), reprinted at 1995 U.S.C.A.A.N. 730.

The PSLRA directs the Court to consider any motions brought by plaintiffs or purported class members to appoint lead plaintiffs filed in response to any such notice not later than 90 days after the date of publication, or as soon as practicable after this Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. This provision further directs the Court to appoint the "most adequate plaintiff" to serve as lead plaintiff and, in making this determination, to presume that this is the entity that, among other things, has "the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

Westchester Capital believes that it has the largest financial interest in the relief sought by the class. Further, Westchester Capital will ensure that the litigation is conducted in the best interests of the members of the class and is not subject to any unique defenses that would render it incapable of adequately representing the class. Therefore, Westchester Capital respectfully requests that the Court grant its motion to be appointed lead plaintiff, and approve its selection of Abbey Spanier Rodd, Abrams & Paradis, LLP as lead counsel.

## FACTUAL BACKGROUND

The actions alleges that defendants violated Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by issuing a series of material misrepresentations to the market during the Class Period and thereby artificially inflating the price of IMAX securities. The defendants included: IMAX, Richard L. Gelfond, Bradley J. Wechsler, and Francis T. Joyce.

The lawsuit arises out of material omissions and false and misleading statements issued by defendants whereby, among other things, defendants failed to disclose: (1) that defendants improperly timed revenue recognition from theatres; (2) specifically, that the Company recognized revenue in the fourth quarter of 2005 from at least ten theatres before the theatres had been completed until the first, second and third quarter of 2006; (3) that the Company's financial statements were materially inflated; (4) that the Company lacked adequate internal controls; (5) that the Company's financial statements were presented in violation of Generally Accepted Accounting Principles ("GAAP"); and (6) that the Company sought to manipulate its financial results because its desired to attract entities interested in buying or merging with the Company.

The Company's theaters system sales and lease transactions typically involve the delivery of several products and services, including the projector, projection screen and sound system, supervision of installation, training of theater personnel and advice on theatre design and custom assemblies. The Company's theater systems include specialized projection equipment, advanced sound systems, specialty screens, theater automation control systems and film handling equipment. Through the use of the multiple element accounting method, defendants improperly recognized revenue in 2005 on all of the elements of 10 theatres systems except the screen element because the IMAX screens had not yet been installed in these theatres and would not be installed until the first, second and third quarters of 2006.

Multiple element accounting arrangement requires that the delivered items be considered a

separate unit of accounting if the delivered items have value to the customer on a stand alone basis. Multiple element accounting also requires that the revenue is allocated among the elements based on the fair value of the element; and that the undelivered elements is not essential to the functionality of the delivered element.

Screens in IMAX theaters are as large as one hundred or more feet wide and eight stories tall and the Company believes they are the largest cinema screens in the world. Unlike standard cinema screens, IMAX screens extend to the edge of the viewer's peripheral vision. The IMAX screens are an integral and necessary element for the IMAX theater system to create the experience that the Company is seeking for its viewers. The IMAX screen is an essential element necessary for the functionality of all of the other elements of an IMAX theater. The Company recognized revenue for 10 theaters in 2005 even though the IMAX screen had not yet been installed therefore the theatre system was incomplete and not functional as an IMAX theatre system.

In order to sell the Company defendants knew that they have to improve IMAX's financial condition. During the Class Period, defendants embarked on an aggressive scheme to recognize revenue on sales and lease theatre arrangements by utilizing multiple element accounting. Through the use of this aggressive accounting method, IMAX was able to materially manipulate its 2005 fourth quarter and year-end financial statements to create the impression that IMAX was a growing, successful and profitable Company.

Defendants knew that they had to show "solid fiscal 2005 results" in order to sell the Company and therefore, included in the "solid fiscal 2005 results" a material amount of revenue from ten theatres that had not been completed in 2005 because the essential IMAX final screen had not been installed in any of these theatres. Defendants knew that they had to show that IMAX was a growing company with solid financials so that it would be much more attractive to a potential buyer.

The failure of the Defendants to inform Plaintiff and other proposed Class members of material information, and their efforts to conceal the truth, caused the Company's stock price to trade at inflated prices, during which time IMAX sought investors to purchase the Company and therefore sought to maximize the perceived value of the Company.

On August 9, 2006, IMAX revealed the truth concerning its financial circumstances. After the market closed, IMAX shocked investors when the Company announced that it was in the process of responding to an inquiry from the SEC regarding the Company's timing of revenue recognition, including its application of multiple element arrangement accounting of its revenue recognition for its theatre systems. In its August 9, 2006 press release the Company stated that recognized revenue in 2005 on ten theatres installations in theatres where the IMAX screen not had not yet been installed. On this news the price of the Company's common stock to fall by 40.6%, or $3.91. The crash of the Company's stock price caused significant harm to IMAX's other public shareholders.

**<u>RELATED ACTIONS SHOULD BE CONSOLIDATED</u>**

The PSLRA, among other things, provides for consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(ii) of the Exchange Act addresses the issue of consolidation of similar actions filed under the PSLRA:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21D(a)(3)(B)(I)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. §78u-4(a)(3)(B)(ii). Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or

> all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Accordingly, a two-step process is applied in determining lead plaintiff and lead counsel status when consolidation is an issue. First, the Court shall rule on the consolidation issue. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. Each of the above captioned actions involves class action claims on behalf of class members who purchased or otherwise acquired IMAX securities during the Class Period. Westchester Capital believes consolidation is appropriate for the related actions filed in this Court because they involve common questions of law and fact and allege the same or similar claims under the Federal securities laws on behalf of the same or similar plaintiff class. *Werner v. Satterlee, Stephen, Burke & Burke*, 797 F. Supp. 1196, 1121 (S.D.N.Y. 1992) (consolidation appropriate in securities actions where complaints are based on the same public statements and reports and there are common questions of law and fact). In addition, all actions will involve similar issues regarding class certification, and will involve identical discovery of the parties and of non-parities. Accordingly, these actions should be consolidated for all purposes in the interest of judicial economy and overall efficiency. *See, Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation."). Second, after the cases have been consolidated, the Court rules on the lead plaintiff and lead counsel issues.

Westchester Capital therefore, requests that the Court consolidate the above captioned actions and any subsequently filed related actions and then rule on the lead plaintiff and lead counsel issues in this matter.

## POINT I

## WESTCHESTER CAPITAL SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CONSOLIDATED ACTION

### A. THE PROCEDURES REQUIRED BY THE PSLRA

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for the selection of Lead Plaintiff to oversee class actions brought under the federal securities laws. Specifically, §21D(a)(3)(A)(i) provides that within 20 days after the date on which the first class action is filed under the PSLRA, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice informing class members of the action and its right to file a motion for the appointment of lead plaintiff.

The PSLRA provides that within 60 days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by a plaintiff or purported class members to serve as Lead Plaintiff in response to any such notice by not later than 90 days after the date of publication pursuant to §21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this section the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members that the Court determines to be most capable of adequately representing the interests of class members.

In determining the "most adequate plaintiff" the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**B. WESTCHESTER CAPITAL SATISFIES THE LEAD PLAINTIFF PROVISIONS OF THE PSLRA**

**1. Westchester Capital Has Complied With The PSLRA**

Plaintiff in the first filed action caused a notice to be published on August 11, 2006 on MARKET WIRE, a widely circulated national business-oriented wire service. The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)((3)(A) and (B) expires on October 10, 2006. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Westchester Capital herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class. See Kaboolian Decl., Ex. A.

Westchester Capital, through its authorized agent, signed a certification stating that it had reviewed a complaint filed in the action, and that Westchester Capital is willing to serve as a representative party on behalf of the Class. See Kaboolian Decl., Ex. B. The certification demonstrates that Westchester Capital has suffered losses of approximately $3,623,551.79 in connection with the acquisition of IMAX securities. See Kaboolian Decl. Ex. C. In addition, Westchester Capital has selected and retained experienced and competent counsel to represent him and the Class. See Kaboolian Decl. Ex. D.

**2. Westchester Capital Has The Largest Financial Interest In The Relief Sought**

The most adequate plaintiff is the person or group of persons that in the determination of the

Court has the largest financial interest in the relief sought by the class. The certification demonstrates that during the Class Period Westchester Capital acquired 1,538,087 shares of IMAX common stock at prices artificially inflated by defendants' false and misleading statements and have suffered losses of approximately $3,623,551.79. Westchester Capital did not hold any IMAX shares prior to the beginning of the Class Period therefore Westchester Capital's losses are $3,623,551.79 under either LIFO ("last in, first out") or FIFO ("first in, first out") basis. See Kaboolian Decl., Ex. B and C. To the best of its knowledge, Westchester Capital has the largest financial interest in the relief sought by the Class. Westchester Capital therefore, is presumptively the most adequate Lead Plaintiff pursuant to the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

**3. <u>Westchester Capital Otherwise Satisfies Rule 23</u>**

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. At this stage of the action, Westchester Capital "need only make a preliminary showing that it satisfy the typicality and adequacy requirements of Rule 23". *In re eSpeed, Inc. Sec. Litig*. 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D. N.Y. 1998)

Moreover, the PSLRA provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that the individuals or the group "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 12 U.S. C. 78u-4(a)(3)(B)(iii)(II). Thus, in deciding a lead plaintiff motion, the Court may limit its inquiry to the typicality and adequacy prongs of Rule

23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

As detailed below, Westchester Capital satisfies the typicality and adequacy requirements of Rule 23.

### (a) The Claims Of The Proposed Lead Plaintiffs Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has: (a) suffered the same injuries as the absent class members; (b) as a result of the same course of conduct by defendants; (c) and its claims are based on the same legal issues. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). The questions of law and fact common to the class members here, which predominate over questions that may affect individual claims, include: (a) whether the federal securities laws were violated by defendants' acts; (b) whether defendants' statements during the Class Period omitted and/or misrepresented material facts; (c) whether the defendants acted intentionally or recklessly; (d) whether the market price of IMAX stock was artificially inflated due to the activities complained of; and (e) the extent of damages class members sustained and the appropriate measure of those damages. Westchester Capital's claims are typical of the claims of the members of the proposed class. Westchester Capital, as do all members of the class, alleges that certain of IMAX's directors and high ranking officers violated the Exchange Act by publicly disseminating false and misleading statements, and by failing to disclose material adverse facts about IMAX during the Class Period. Further, Westchester Capital as did all of the members of the proposed class, acquired IMAX stock at prices inflated by defendants' misrepresentations and omissions and were damaged thereby. The typicality requirement is satisfied here because the claims asserted by Westchester Capital are based on the same legal theory and arise "from the same course

of conduct, and each class member makes similar legal argument to prove defendants liability." *Drexel Burnham*, 960 at 291.

**(b) The Proposed Lead Plaintiff Will Fairly And Adequately Represent The Interests Of The Class**

The interests of Westchester Capital are clearly aligned with the members of the proposed class. There is no evidence of any antagonism between the interests of these individuals and the proposed class members. As detailed above, Westchester Capital shares substantially similar questions of law and fact with the members of the proposed class, its claims are typical of the members of the class, and it has taken significant steps to advance this litigation. In addition, Westchester Capital has amply demonstrated its adequacy to serve as class representative by signing a certification affirming its willingness to serve as, and assume the responsibilities of class representative.

Finally, Westchester Capital has selected and retained counsel highly experienced in prosecuting securities class actions such as this to represent them. For these reasons, Westchester Capital should be appointed Lead Plaintiff in the consolidated action.

## POINT II

## THIS COURT SHOULD APPROVE WESTCHESTER CAPITAL'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. See §21D(a)(3)(B)(v). Westchester Capital has selected the law firm of Abbey Spanier Rodd Abrams & Paradis, LLP to serve as Lead Counsel. Abbey Spanier has extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. See Kaboolian Decl. Ex. D.

## CONCLUSION

For the foregoing reasons, Westchester Capital respectfully requests that the Court: (i) consolidate all related cases (ii) appoint Westchester Capital as Lead Plaintiff in the consolidated action; and (iii) approve its choice of Abbey Spanier Rodd Abrams & Paradis, LLP as Lead Counsel.

Dated: October 10, 2006

Respectfully Submitted,

**ABBEY SPANIER RODD ABRAMS & PARADIS, LLP**
By: /s/
Arthur N. Abbey
Nancy Kaboolian (NK 6346)
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

Proposed Lead Counsel

Laurence D. Paskowitz, Esq.
Roy L. Jacobs, Esq.
PASKOWITZ & ASSOCIATES
60 East 42nd Street, 46th floor
New York, New York 10016
(212) 685-0969